```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
BENJAMIN HOLMES,                                                 :
                                                                 :
                                  Plaintiff,                     :
                                                                 :         19-cv-8962 (LJL)
             -v-                                                 :
                                                                 :         OPINION & ORDER
DEPARTMENT OF HOMELESS SERVICES, et al.,                         :
                                                                 :
                                  Defendants.                    :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

   Pro se plaintiff Benjamin Holmes filed this action on September 26, 2019 alleging the violation of his constitutional rights by employees of the New York City Department of Homeless Services ("DHS") during security screenings at the entrance of a homeless shelter where Mr. Holmes resided. Pursuant to Court order, the New York City Law Department identified the location at which the alleged violations occurred. Dkt. No. 6. Plaintiff subsequently amended his complaint on February 7, 2020, to add additional defendants and new allegations. Dkt. No. 11.

   Defendant City of New York (the "City") moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the basis that (1) Plaintiff fails to state a constitutional claim, (2) Plaintiff fails to state a claim for municipal liability against the City, and (3) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, to the extent that Plaintiff's complaint can be interpreted to allege state law violations. Dkt. No. 19.

## BACKGROUND

   Plaintiff alleges in the Amended Complaint (the "Amended Complaint") that his

constitutional rights were violated on July 23, 2019 when Officer Garcia, a DHS officer, scanned him with a magnetic wand prior to entry into a homeless shelter on Ward's Island.  Dkt. No. 11.  Plaintiff alleges that Officer Garcia caused him to have medical complications "by putting [a] magnetic wand to my stomach eight inches from my heart valve."  *Id*.  Plaintiff alleges Officer Garcia and another officer performed further scans with the magnetic wand on November 8, 2019 and November 9, 2019, before letting Plaintiff into the shelter.  *Id.*  Plaintiff also alleges that Officer Garcia grabbed his hand, causing his motorized scooter to raise up into the air and causing Plaintiff to fear for his life.  Dkt. No. 11.

## PROCEDURAL HISTORY

Plaintiff filed a complaint on September 26, 2019 and named Department of Homeless Services ("DHS") and United States Department of Homeland – Wikipedia as defendants.  Dkt. No. 2.  On October 23, 2019, the Court issued an Order of Service construing Plaintiff's claims against DHS as against the City of New York (the "City") and directing the New York City Law Department to investigate the shelter at which the alleged violations occurred.  Dkt. No. 6.  The City identified the shelter, and Plaintiff subsequently filed an amended complaint on February 7, 2020, adding additional defendants – the Director Sunken Garden Loop, Mrs. Wilson, Mrs. Wugu, Officer Garcia, Officer Oyola, and Officer Zimmerman.  Dkt. No. 11.

On October 21, 2019, the Court granted Plaintiff permission to proceed *in forma pauperis*.  Dkt. No. 4.  On March 10, 2020, the Court *sua sponte* dismissed Plaintiff's allegations against four Defendants: the United States Department of Homeland – Wikipedia, ("DHS"), Mrs. Wilson, and Mrs. Wugu.  Dkt. No. 14.  The Court construed claims against the United States Department of Homeland – Wikipedia as against DHS because the former entity does not exist. Dkt. Nos. 6, 14.  The Court then dismissed the Plaintiff's claims against DHS as frivolous

because such claims are barred by the doctrine of sovereign immunity.  *Id.*  The Court again construed the claims against DHS as against the City of New York, thus dismissing the claims against the New York City Department of Homeless Services.  *Id.*  The Court dismissed claims against Mrs. Wilson and Mrs. Wugu due to those Defendants' lack of personal involvement in the conduct alleged.  Dkt. No. 14.  The Court also amended Defendant "Director, Sunken Garden Loop" to "Shamonique Lawes," who was identified by Defendant City of New York as the "Director of Ward's Island Shelter."  *Id.*  On March 10, 2020, the Court also entered an order of service, directing the United States Marshals Service to make service upon the individual defendants.  Dkt. No. 14.  The service has not yet been effectuated, likely due to the novel coronavirus pandemic.

Defendant, the City of New York, filed its motion for judgment on the pleadings on October 13, 2020, which the Court now considers.  Dkt. No. 29.

## LEGAL STANDARD

In considering a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a court applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."  *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).  In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although Plaintiff has not opposed the City's motion, Plaintiff's failure to oppose the motion does not itself justify the dismissal of the complaint.  *See McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir. 2000); *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983).  "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency . . . Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'"  *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall*, 232 F.3d at 322)); *see also Strachn v. City of New York,* 2020 WL 6291428, at *1 (S.D.N.Y. Oct. 27, 2020); *Blanc v. Capital One Bank*, 2015 WL 3919409, at *2–3 (S.D.N.Y. June 24, 2015); *Vargas v. Pers.,* 2014 WL 1054021, at *2 (S.D.N.Y. Mar. 17, 2014); *O'Garro v. Comm'r of Soc. Sec.*, 2013 WL 5798537, at *2 (S.D.N.Y. Oct. 24, 2013).

The Court construes pro se pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  This obligation "is especially true when dealing with *pro se* complaints alleging civil rights violations."  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).  However, while the Court construes *pro se* pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 547.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687

(S.D.N.Y. 2007); *see also Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (requiring that pro se litigants allege sufficient facts to indicate deprivation of a constitutional right).

## DISCUSSION

Plaintiff alleges that the scans with the magnetic wand violated his constitutional rights. Dkt. No. 6.  The Court construes the Complaint as alleging claims under 42 U.S.C. § 1983 based on violations of unspecified constitutional rights.  Defendant argues that Plaintiff fails to state a claim of unconstitutional conduct and fails to allege municipal liability.  Dkt. No. 29.  Defendant also urges the Court to decline to exercise supplemental jurisdiction over any state law claims it may construe from the Amended Complaint.  *Id.*

A. <u>Plaintiff Fails to State a Claim under 42 U.S.C. § 1983</u>

Plaintiff's claims are analyzed under 42 U.S.C. § 1983 because he seeks monetary damages for an alleged violation of his constitutional rights.  Dkt. No. 29.  Section 1983 "is not itself a source of substantive rights," but rather provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).  To successfully plead a § 1983 claim, a plaintiff must allege two elements.  First, "the conduct complained of must have been committed by a person acting under color of state law."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986)).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Id.*  Here, because the Amended Complaint, even liberally construed, does not identify any such right, privilege, or immunity of which Plaintiff has been deprived, he fails to

plausibly allege a claim pursuant to § 1983.

Additionally, Plaintiff has not plausibly alleged that the magnetic wand used at the Ward's Island shelter security checkpoint harmed him.  Plaintiff alleges that the searches with the magnetic wand "cause[d] [him] to bleed inside [his] body," caused him "pain in his chest," and made his "urine . . . red."  Dkt. No. 11.  Plaintiff also alleges that he "went to the hospital for two days" and "went to the cardiologist doctor to have [his] heart check[ed]."  *Id.*  He does not allege, however, that the visits to the hospital or the cardiologist showed any injury to him, nor does he offer any other allegation of fact, other than his own beliefs, that he was harmed by the "magnetic wand."  Dkt. No. 6.  "Courts have the power and duty to dismiss complaints that contain only conclusory, frivolous, or implausible allegations."  *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); s*ee Gladden v. City of New York*, 2013 WL 4647193, at *2 (S.D.N.Y. Aug. 29, 2013) (dismissing plaintiff's claim that Rikers Island was contaminated with methane because there were no facts establishing that the alleged methane presented any harm to the plaintiff); *Loccenitt v. City of New York,* 2012 WL 3822701, at *4 (S.D.N.Y. July 30, 2012), *adopted,* 2012 WL 3822213 (S.D.N.Y. Sept. 4, 2012) (dismissing plaintiff's complaint about his exposure to environmental harms at Rikers Island, and concluding that "no facts are alleged linking any of plaintiff's alleged conditions to any of the alleged environmental toxins; all the complaint offered were plaintiff's *ipse dixit* pronouncements.  Such conclusory statements do not satisfy *Twombly.*"). Plaintiff's conclusory statements are insufficient to allege a constitutional violation.

Plaintiff also fails to state a cognizable constitutional violation based upon the allegation that Officer Garcia "grabbed his hand," causing Plaintiff's motorized scooter to raise up into the air such that Plaintiff feared for his life.  Dkt. No. 11.  The Court construes this allegation as a

6

claim of excessive use of force under 18 U.S.C. § 1983.  Again, as § 1983 does not grant any substantive rights, the first step in addressing a § 1983 claim is identifying the underlying Constitutional right allegedly infringed upon by the use of force.  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Baker*, 443 U.S. at 140 ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws") (internal quotation marks omitted).  Most commonly, either the Fourth Amendment's prohibition on unreasonable seizures or the Eighth Amendment's ban on cruel and unusual punishment will be invoked as the right underlying the § 1983 excessive force claim.  *See Graham,* 490 U.S. at 394.  Here, Plaintiff's excessive force claim should be analyzed under the Fourth Amendment because "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard."  *Id.* at 395 (emphasis and internal quotation marks omitted).

      Determining whether law enforcement's use of force was reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case." *Id.* at 396.  The reasonableness standard is objective, hinging on "whether an officer's conduct was appropriate in light of the facts and circumstances confronting him," irrespective of the officer's underlying intent or motivations.  *Cugini v. City of New York*, 941 F.3d 604, 608 (2d Cir. 2019) (citing *Graham,* 490 U.S. at 397).  To make an excessive force claim, "a plaintiff must present sufficient evidence to establish that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable."  *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (certain internal quotation marks omitted) (quoting *United States v.*

7

*Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).  Consequently, "a *de minimis* use of force will rarely suffice to state a Constitutional claim."  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

Even accepting Plaintiff's claims that Officer Garcia grabbed his hand and caused his motorized scooter to raise up, these facts do not amount to a constitutional violation under § 1983.  Plaintiff has neither alleged that the use of force was "objectively sufficiently serious," nor "harmful enough to be actionable."  *Walsh*, 194 F.3d at 47.  Although even *de minimis* injuries can be probative in excessive force claims, Plaintiff fails to allege any cognizable injury or harm resulting from the encounter.  *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 645 (S.D.N.Y. 2020) (*de minimis* nature of injuries are not fatal to excessive force cases); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (a *de minimis* injury is relevant to an excessive force allegation "because it is probative of the amount and type of force actually used by the arresting officers").  The only potential resulting harm Plaintiff cites is his own subjective feeling of "fear for [his] life."  Dkt. No. 11.  Plaintiff's allegations are insufficient to make out an excessive force claim.

As Plaintiff does not make a cognizable constitutional claim under § 1983, any other opportunity for relief would properly be pursued in state court under common law tort theories.  *See Baker*, 443 U.S. at 146 ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.  Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.").

B.  Plaintiff Fails to Adequately Allege Municipal Liability

To plead § 1983 claims against a municipality, such as the City of New York, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) *(citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). A plaintiff satisfies the "policy or custom" requirement by alleging one of the following:

> "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Johnson v. Paul*, 2018 WL 2305657, at *3 (S.D.N.Y. May 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Plaintiff's claim fails at the threshold. He cannot establish municipal liability against the City of New York because he does not sufficiently or plausibly allege a constitutional violation. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (finding no municipal liability in the absence of a constitutional violation); *Martinez v. Muentes*, 340 Fed. Appx. 700, 702 (2d Cir. 2009) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.") (internal quotation marks omitted). Even if Plaintiff's constitutional rights had been violated, Plaintiff's claims would still fail because he has not alleged an unconstitutional municipal policy or custom. Vague, speculative, or conclusory allegations about the existence of a policy or custom do not suffice to state a § 1983 claim against a municipal defendant. *See, e.g., Davis v. City of New York*, 2008 WL 2511734, (S.D.N.Y. June 19, 2008); *Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 438-39 (S.D.N.Y.) (dismissing municipal claims and rejecting the argument that plaintiff's complaint was "only required to contain a bare assertion that the challenged action was taken pursuant to a municipal policy or custom"), *aff'd*, 242 F.3d 367 (2d Cir. 2000).

Here, Plaintiff's Amended Complaint does not include factual support for the proposition that the City of New York has any unconstitutional policy that relates to Plaintiff's claims. Dkt. No. 11. Plaintiff has not alleged a specific policy or custom that he believes to be unconstitutional, nor has he offered facts from which it may plausibly be inferred that the City had an illegal custom or policy with regard to its security procedures at homeless shelters. *Id.* Plaintiff instead describes instances of security screening which he believes caused him injuries and which he claims are unconstitutional. These unsupported allegations are not sufficient to plead a constitutional claim against a municipality. *See Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 (2d Cir. 1998) (recognizing that "the Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct."); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (affirming dismissal after finding that plaintiff's complaint was "silent as to anything which defendant . . . did or failed to do"). As the Amended Complaint does not identify any policy, custom, or practice which caused the alleged harm, Plaintiff fails to adequately allege municipal liability.

C. The Court Declines to Exercise Jurisdiction Over Possible State Law Claims

This Court has supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As noted by the Supreme Court when discussing § 1367's predecessor doctrine, supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Subsection (c) of § 1367 says that a district court "may decline to exercise

supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction," thus confirming that such jurisdiction is discretionary.  28 U.S.C. § 1367(c)(3); *see City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

To determine whether to exercise supplemental jurisdiction under § 1367(c)(3), a district court balances the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 446–47 (2d Cir. 1998).  The Supreme Court in *Cohill* provided additional guidance for district courts in pre-trial contexts, noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  484 U.S. at 350 n. 7; *see Kolari*, 455 F.3d 118 at 122*; see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) ("Although there is no 'mandatory rule to be applied inflexibly in all cases,' it is clear that 'in the usual case in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction.") (quoting *Cohill* 484 U.S. at 350).

Accordingly, although Plaintiff does not allege violations of state law explicitly, the Court will not exercise its discretionary supplemental jurisdiction over any state law claims which might be construed from the Amended Complaint.

## CONCLUSION

For the reasons stated, the motion for judgment on the pleadings is GRANTED for failure to state a claim for relief.

Because the Second Circuit has made clear that district courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), the Court grants Plaintiff sixty (60) days, until June 9, 2021, to file an amended complaint with allegations to support his constitutional claims. If Plaintiff fails to file a timely amended complaint, the Court will terminate the case.

The Clerk of Court is respectfully directed to close Dkt. No. 27 and to mail a copy of this Opinion to Plaintiff.

The Court certifies under 28 U.S.C. § 1915(a)(3) that an appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.

SO ORDERED.

Dated: April 9, 2021
      New York, New York

                                                 LEWIS J. LIMAN
                                             United States District Judge